873 F.2d 1327
 13 Fed.R.Serv.3d 1155
 JENSEN ELECTRIC COMPANY, a Nevada Corporation, Plaintiff,
v.
MOORE, CALDWELL, ROWLAND & DODD, INC., a/k/a Dynacon
Systems, Inc., a California Corporation, Defendant.
QUALCORP, INC., a Delaware Corporation, dba Nes/Dyncon,
Defendant/Third party Plaintiff,
and
Harry L. Styron, Appellant,
v.
Gregory J. OSBORNE, Third party Defendant/Appellee.
 No. 88-1768.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 16, 1989.
Decided May 8, 1989.
 
 Harry L. Styron, Walnut Creek, Cal., for appellant.
 Peter B. Sandmann, San Francisco, Cal., for appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before TANG, SKOPIL and SCHROEDER, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 This is an appeal from an order of the district court awarding costs and attorney's fees to a third party defendant, Gregory Osborne ("Osborne"), as a sanction against Harry Styron ("Styron"), lead counsel for the third party plaintiff, Qualcorp, Inc. ("Qualcorp"). The district court concluded that Qualcorp's third party complaint, filed by Styron, was "frivolous and without factual foundation" and that Styron "did not have reasonable grounds to bring a third-party complaint against Osborne." We disagree. Under the circumstances of this case, the filing of the third party complaint was not sanctionable conduct. We reverse.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 The underlying action in this case arose from a dispute between Jensen Electric Company ("Jensen"), a Nevada electrical contractor, and Dynacon Systems, Inc. ("DSI"). In 1983 Jensen hired DSI to design and build a computer-based facilities management alarm system for Jensen to install into a new hotel in Reno, Nevada. DSI in turn hired Osborne, an electrical engineer, as an independent contractor to design and implement the computer hardware programs for the system. Osborne reported daily to DSI's president and worked closely with DSI employees Joseph Caldwell, the project engineer, and Tom Kilpatrick, the senior physicist on the Jensen project.
 
 
 3
 In 1984 Qualcorp purchased DSI and took over the Jensen contract. Caldwell and Kilpatrick resigned their employment with DSI but continued on the project as consultants to Qualcorp. Qualcorp never completed the Jensen project. In late 1984, Jensen ordered Qualcorp to cease work on the project. Thereafter Osborne terminated his contract with Qualcorp and went to work for Jensen.
 
 
 4
 Jensen filed this action against Qualcorp, seeking damages for fraud and breach of contract. Qualcorp counterclaimed for unreimbursed expenses and simultaneously filed a third party complaint against Osborne. The parties agreed to binding arbitration, specifically preserving costs, attorney's fees, and sanctions for the district court. The arbitrator's award provided that Jensen recover nothing from Qualcorp, Qualcorp recover nothing from Jensen, and Qualcorp recover nothing from Osborne.
 
 
 5
 Osborne thereafter sought in district court to recover costs and attorney's fees against Styron. The district court agreed to impose sanctions on Styron pursuant to Fed.R.Civ.P. 11 and ordered Osborne to submit a declaration of costs and fees. By separate order the court awarded $52,359.58 to Osborne.
 
 
 6
 Styron thereafter moved for reconsideration pursuant to Fed.R.Civ.P. 59. The court ruled that the motion was timely only as to the order setting the amount and not to its order awarding sanctions. The district court denied the motion.
 
 DISCUSSION
 A. Jurisdiction
 
 7
 "An order imposing sanctions upon counsel, a nonparty, is final and appealable by the person sanctioned upon imposition of the sanction." Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1508 n. 5 (9th Cir.1987). Osborne contends that Styron did not timely appeal the district court's award of sanctions but rather timely appealed only the court's order setting the amount. Osborne reasons that an award of sanctions, even if it does not specify an amount, is nevertheless "final and appealable by the person sanctioned, when the sanction is imposed." Optyl Eyeware Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1047 n. 1 (9th Cir.1985).
 
 
 8
 We disagree. An order awarding attorney's fees which does not fully dispose of the issue of attorney's fees is not a final, appealable order. Rosenfeld v. United States, 859 F.2d 717, 720 (9th Cir.1988). For example, if the district court explicitly provides for revision of the amount of the award, the order does not fully dispose of the attorney's fees issue. Id. Indeed, an order "finding appellant liable for attorney's fees and costs but without determining the specific amount of that award is not a final and appealable order." Gates v. Central States Teamsters Pension Fund, 788 F.2d 1341, 1343 (8th Cir.1986).
 
 
 9
 The district court's first order imposing sanctions but not setting an amount was therefore not a final or appealable order. See Barry v. Bowen, 825 F.2d 1324, 1329 (9th Cir.1987) (a court's first decision, if later modified, is not final); Munich v. United States, 330 F.2d 774, 775 (9th Cir.1964) (order requiring party to prepare dispositive order is not final). Styron timely moved for reconsideration of the order setting the amount of sanctions and thereafter timely appealed the denial of that motion. We therefore have jurisdiction to consider the merits of the district court's imposition of sanctions.
 
 B. Rule 11 Sanctions
 
 10
 Rule 11 provides that for certain conduct, the court may impose "an appropriate sanction, which may include an order to pay ... a reasonable attorney's fee." The rule is intended to prevent frivolous filings and filings made for an improper purpose, such as personal or economic harassment. Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir.1986). The district court's legal conclusion that Rule 11 sanctions are appropriate is reviewed de novo. Lemos v. Fencl, 828 F.2d 616, 618 (9th Cir.1987).
 
 
 11
 Our inquiry here is whether Qualcorp's third party complaint was frivolous. See Greenburg v. Sala, 822 F.2d 882, 885 (9th Cir.1987) (where a complaint is at issue, the improper purpose analysis is not applicable because a non-frivolous complaint cannot be filed for an improper purpose). A complaint is factually frivolous if "a competent attorney, after reasonable inquiry, could not form a reasonable belief that the complaint was well founded in fact." Id. at 887. Furthermore, "a complaint that is well-grounded in fact and law cannot be sanctioned regardless of counsel's subjective intent." Rachel, 831 F.2d at 1508. Thus, "[t]he key question in assessing frivolousness is whether a complaint states an arguable claim--not whether the pleader is correct in his perception of the law." Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159 (9th Cir.1987).
 
 
 12
 Qualcorp's third party complaint alleged that Osborne was responsible for the computer hardware programs and that any damages sustained by Jensen were caused by Osborne. Qualcorp, as a third party plaintiff, was entitled to implead Osborne as "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim...." Fed.R.Civ.P. 14(a). Osborne's liability was premised on Qualcorp's right of indemnification. See Commercial Union Ins. Co. v. Ford Motor Co., 640 F.2d 210, 212 n. 2 (9th Cir.) (defining right of indemnification under California law), cert. denied, 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981); Banks v. City of Emeryville, 109 F.R.D. 535, 540 (N.D.Cal.1985) (same).
 
 
 13
 Osborne complains, however, that Qualcorp, at the time of filing the third party complaint, did not have any specific reason to suspect Osborne's work because the hardware programs were performing satisfactory when Jensen terminated the contract. Styron responds that at that time, no "field testing" had occurred, and, assuming Jensen's complaint to be valid, Osborne was the responsible party because computer hardware is supposed to take into account "field variables" such as temperature, humidity, and electric currents. Styron further explains that he chose not to implead other potential indemnitors (i.e., Caldwell or Kilpatrick) because Osborne's computer hardware appeared to be the basis for Jensen's complaint. Finally, Stryon maintains that he filed Qualcorp's third party complaint only after he met with his clients for eleven hours, reviewed Osborne's computer hardware blueprints, and concluded that if there was something wrong with the system, Osborne's hardware was the cause.
 
 
 14
 Thus, it appears that Sytron made an a reasonable inquiry into the facts before filing Qualcorp's third party complaint. See Rachel, 831 F.2d at 1508 (counsel has affirmative duty of investigation into law and fact before filing). Moreover, even if Styron was wrong about Osborne's liability, "we are reluctant to impose sanctions for factual errors, especially errors in papers filed before an opportunity for discovery, if the litigant has conducted a reasonable inquiry into the facts." Greenburg, 822 F.2d at 887. To warrant sanctions, a complaint must be "baseless" and "lacking in plausibility." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). "Hence, if there is any possible scenario under which the third party defendants may be liable for all or a part of the defendants' liability to the plaintiffs, the third party complaint should be allowed to stand." Banks, 109 F.R.D. at 540. While perhaps poorly pleaded, Styron's complaint presented an arguable claim for Osborne's liability to Qualcorp and thus was not frivolous. Accordingly, we reverse the imposition of sanctions.
 
 
 15
 REVERSED.
 
 SCHROEDER, Circuit Judge:
 
 16
 I concur in Judge Skopil's opinion. I write separately because this case so dramatically illustrates that even in the hands of our ablest judges Rule 11 can lead to costly and aimless satellite litigation having nothing to do with the dispute between the parties. Here indeed the sanctions tail is wagging the dog.
 
 
 17
 In this case four Article III judges, the district judge and three circuit judges, have grappled with the issue of attorney sanctions without ever seeing the merits of the underlying lawsuit. We have spent valuable time attempting to evaluate the reasonableness of a single filing divorced from the context of the parties' dispute. This came to pass because, while the parties commendably agreed to arbitrate the dispute between the plaintiff and the defendant, the district court retained jurisdiction to handle Rule 11 matters.
 
 
 18
 The scenario of the underlying dispute is a familiar one. A buyer sued a seller because of an allegedly defective product, and the seller filed a third-party complaint against one of the designers of the product, alleging that if the defendant was liable to the plaintiff, the ultimate liability for the defect should fall on the designer. Such a pleading is clearly contemplated by the terms of Fed.R.Civ.P. 14(a), which provides that a defendant (third-party plaintiff) may bring in a third party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Judge Skopil's opinion quite properly holds that there is nothing in this record to indicate any impropriety in the filing of that third-party complaint.
 
 
 19
 The arbitrator resolved the underlying dispute by deciding that the defendant was not liable to the plaintiff, and hence the third-party defendant was not liable to the defendant. The third-party defendant then moved for sanctions against the defendant's counsel in the district court.
 
 
 20
 With the sanctions issues torn out of the fabric of any case or controversy between the parties, the district court was simply not in a position to evaluate the basis for the filing of the third-party complaint. Nor could the district court have evaluated the strength or weakness of that complaint without wasteful reexamination of the merits of the underlying dispute. That dispute, ironically for purposes of judicial economy, had already been determined by an arbitrator.
 
 
 21
 The result was that the district court heard and accepted arguments in favor of sanctions which in different circumstances would have appeared patently ludicrous and in conflict with established principles designed to avoid wasteful and repetitive litigation. For example, the appellee maintained that defendant's lawyer could not have had a proper purpose for filing the third-party complaint because the lawyer filed only one third-party complaint, and did not implead everyone involved in the design of the product. If accepted, this argument would signal to lawyers that they should protect themselves from Rule 11 sanctions by suing everyone in sight, the very antithesis of the stated purpose of Rule 11 to discourage unnecessary litigation. The Advisory Committee Notes to the 1983 amendments to Rule 11 declared that the Rule's purpose was to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Fed.R.Civ.P. 11, Advisory Committee Note. In this case, the Rule subverted rather than served that goal.
 
 
 22
 Appellee pointed out that the underlying theory of the third-party complaint was based upon indemnification, and then argued from that premise that the complaint should not have been filed until after the liability of the defendant was established. In other words, appellee urged that it is better to have two lawsuits rather than one, a proposition that would wholly frustrate the purpose of Rule 14 and ignore the fifty years of successful experience we have had under it. The original 1938 Advisory Committee Notes to Rule 14(a) recognized the "many advantages" of the impleader device. A leading authority has said that Rule 14 "is intended to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action expeditiously and economically." 6 C. Wright and A. Miller, Federal Practice and Procedure Sec. 1442 (1971). This court has said that the Rule is designed "to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 777 (9th Cir.1986), cert. denied, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). The filing of the third-party complaint here was in keeping with these goals. An award of sanctions against the attorney who filed the third-party complaint is in conflict with them.
 
 
 23
 Another even more discouraging argument was made in support of sanctions here. The appellee contended that the third-party complaint was sanctionable because the defendant's key employees, by stating in deposition that they did not know of anything that the third-party defendant did wrong, conceded that the third-party complaint was frivolous and hence sanctionable. This argument ignores the procedural posture of the underlying lawsuit. There the defendant, who did not initiate the litigation, was maintaining that its product was not defective and that it was not liable to the plaintiff in any amount. If the defendant was justified in that defense, the responses to the answers in the deposition were appropriate and clearly not a basis for sanctioning the third-party complaint.
 
 
 24
 That these arguments ever appeared plausible is, I believe, due to the fact that Rule 11 diverted the district court's attention to one document and away from the exercise of the judicial power conferred in Article III to decide cases and controversies between parties. The case is, I hope, an aberration, but one which may help us bear in mind our primary responsibilities.