**In re William MILLER, Reorganized Debtor.**

**William M. Miller, Reorganized Debtor, Appellant/Plaintiff,**

**v.**

**United States of America, through its Department of Treasury, Internal Revenue Service; and State of California, through its State Board of Equalization, Defendants.**

**No. C–02–0521–SC.**

United States District Court, N.D. California.

Oct. 2, 2002.

Diane Kutzko, Gary J. Streit, Shuttleworth & Ingersoll, PC, Cedar Rapids, IA, Iain A. MacDonald, MacDonald & Associates, San Francisco, CA, for Plaintiff.

Jay R. Weill, San Francisco, CA, for United States.

Julian O. Standen, Office of Attorney General, San Francisco, CA, for State of California.

Thomas E. Carlson, U.S. Bankruptcy Court for the Northern District of California, San Francisco, CA, Pro se.

USBC Manager, San Francisco, CA, Pro se.

*ORDER AFFIRMING BANKRUPTCY COURT'S RULING*

CONTI, District Judge.

## I. *INTRODUCTION*

On December 20, 2001, the Bankruptcy Court denied William Miller's claim that the Internal Revenue Service ("IRS") could not claim interest arising after Miller petitioned for bankruptcy but before his reorganization plan was approved. Miller ("Plaintiff") now appeals this decision. For the following reasons, this Court affirms the Bankruptcy Court's ruling.

## II. *BACKGROUND*

On December 20, 1989, Plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. In January, 1994, Plaintiff submitted a reorganization plan, and in April of 1994 the Bankruptcy Court entered its Order Confirming Amended Plan as Modified. The IRS had asserted a claim against Plaintiff for unpaid trust fund taxes. Following confirmation, Plaintiff made his payments to the IRS in accordance with the plan.

In 1999, Plaintiff wrote to the IRS seeking release from any liens it had against him. In 2000, the IRS responded by asserting that Plaintiff still owed interest for the period between his petition for bankruptcy and confirmation of the reorganization plan ("gap interest"). Plaintiff argues that confirmation of the plan discharged any such claims.

Plaintiff originally brought his claim in Bankruptcy Court. In October 2000 and May 2001, the Bankruptcy Court rejected Plaintiff's motions for summary judgment. *In re Miller*, 253 B.R. 455 (Bkrtcy. N.D.Cal.2000); *Order Re Cross Motions for Summary Judgment, Discovery, and Status Conference*, Bankruptcy Case No. 3–89–04281–T, May 2, 2001. On December 5, 2001, the Bankruptcy Judge delivered oral findings and a decision in the IRS's favor, and on December 19 the Bankruptcy Court entered a written judgment. Plaintiff appealed to the Bankruptcy Appellate Panel, and in January, 2002, the United States filed its Notice of Election to Have Appeal Transferred to District Court.

Article XI of Plaintiff's reorganization plan specifically discusses discharge of claims. It states:

Except as otherwise provided in the Confirmation Order or this Plan, the Confirmation Order will act as a discharge and termination, as of the Effective Date, of any and all liabilities and debts of, and claims against the Debtor that arose at any time before the Confirmation Order, including any interest accrued on such claims from and after the Petition Date or interest which would have accrued against the Debtor ...

Except as otherwise provided in this Plan, on the Effective Date, all entities shall be precluded from asserting against the Debtor any other or further debts or interests based upon any act, omission, transaction, or other activity of any kind that occurred prior to the Confirmation Date, all of which debts and interests shall be conclusively deemed released and discharged, as provided in 11 U.S.C. §§ 524 and 1141, and such discharge shall void any judgment against the Debtor at any time obtained

to the extent that it relates to a claim discharged.

First Amended Plan of Reorganization at 10–11.

Plaintiff asserts that this language discharges all claims, including the IRS's claim to GAP interest, and that the IRS is now prevented by res judicata from asserting its claim regardless of whether such claims are dischargeable under the Bankruptcy Code. In the alternative, Plaintiff asserts that this Court should follow the 10th Circuit's decision in *United States v. Victor*, 121 F.3d 1383 (10th Cir.1997), and should find that the plan discharged gap interest claims in accordance with the Bankruptcy Code. The IRS counters that, since the original plan was ambiguous with respect to the scope of the discharge, res judicata does not apply, and that this Court should follow the 11th Circuit in rejecting the *Victor* court's reasoning.

### III. *LEGAL STANDARD*

#### A. Standard of Review

■ This Court reviews a bankruptcy court's conclusions of law de novo and its factual findings for clear error. *In re Reaves*, 285 F.3d 1152, 1155 (9th Cir.2002).

#### B. Res Judicata and Plan Confirmation

■ A court's confirmation of a reorganization plan is a final decision, and the resolution of issues therein has binding res judicata effect. *Rein v. Providian Financial Corp.*, 270 F.3d 895, 898–99 (9th Cir. 2001). This effect may exist even if the terms of the reorganization plan create a discharge not provided for by statute; if a creditor fails to object to a section of the plan, it cannot later assert that the section of the plan is invalid. *In re Pardee*, 193 F.3d 1083, 1085–86 (9th Cir.1999). In order for res judicata to have effect, however, there must be a final decision on the merits of the particular issue. *Rein*, 270 F.3d at 899. If the plan is ambiguous, then this Court cannot find that a claim is barred by res judicata until it unravels the ambiguity and determines how that claim was actually resolved. The ambiguity may also reflect the absence of any final decision on the merits of the particular issue at stake. In either case, the presence of ambiguity will require interpretation of the plan in a later proceeding, and in that proceeding a party may raise a claim contesting the meaning of the plan.

#### C. The Bankruptcy Code

The Bankruptcy Code generally allows an approved reorganization plan to discharge all other debts, leaving the debtor obligated in accordance with the terms of the plan but free from other claims. For some types of obligations, however, the Code allows no discharge. Tax claims, for example, are generally non-dischargeable. The Code thus strikes a balance between allowing the debtor a fresh start and protecting the government's ability to collect revenue. *See In re Gurwitch*, 794 F.2d 584, 585–86 (11th Cir.1986)

Specifically, Bankruptcy Code § 1141 provides that approval of a plan will discharge all other claims against the Debtor. 11 U.S.C. § 1141. Section 1141(d)(2), however, refers to Code § 523(a) for exceptions to this general rule. Among the exceptions are debts "for a tax ... of the kind and for the periods specified in section ... 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). Section 507 discusses the priority order for types of claims; § 507(a)(7) specifically refers to "allowed unsecured claims of government units" for several different types of taxes, which the subsection then describes in detail.

The Ninth Circuit has not yet considered the combined meaning of these statutory sections, but other Circuits currently are split. The 10th Circuit, in *Victor*, focused on the "allowed unsecured claims" language in § 507(a)(7). It held that the sections meant that only unsecured tax claims were non-dischargeable and that secured claims for taxes could be discharged by an approved reorganization plan. 121 F.3d at 1390. The 11th Circuit, in *In re Gust*, 197 F.3d 1112 (11th Cir.1999), rejected this reading of the statute. The 11th Circuit instead noted that Section 523(a) referred to "taxes of a kind," not "claims of a kind." It concluded that the relevant language in § 507(a)(7) thus was the description of various types of taxes, and that the language about unsecured claims was irrelevant to the meaning of § 523(a)(1)(A). *Id.* at 1114–15. Therefore, it held that none of the types of taxes described in § 507(a)(7) could be discharged regardless of whether the claims for those taxes were secured or unsecured. *Id.*

## IV. DISCUSSION

Because the reorganization plan was ambiguous with respect to gap interest, the doctrine of res judicata does not apply, and the IRS was free to assert its claim. Moreover, this Court concludes that *In re Gust*, not *Victor*, offers the better reading of the Bankruptcy Code, and that the IRS's claim was non-dischargeable regardless of whether it was secured or unsecured.

### A. Res Judicata

For res judicata to prevent the IRS from asserting a claim for gap interest, the Bankruptcy Court must have reached a final decision that such claims were discharged. The Bankruptcy Court's order affirming the reorganization plan was a final order, but the plan was ambiguous with respect to gap interest. Once the Bankruptcy Court concluded, in its later proceeding, that the plan was ambiguous, it had no choice but to seek resolution of the ambiguity, and had ample reason to resolve the ambiguity in the IRS's favor.

The first paragraph of Section XI of the reorganization plan purports to discharge all other claims not provided for in the plan. At the outset of the paragraph, however, the plan states that this waiver is effective "except as otherwise provided in the Confirmation Order or this Plan," indicating that there might be some exceptions to this general discharge. The following paragraph implies such an exception. It states that all debts and interests not provided for by the plan will be discharged "as provided for in 11 U.S.C. §§ 524 and 1141."

Plaintiff and the IRS dispute how these paragraphs should be read. The IRS, noting that § 1141(d)(2) provides that certain types of debts are non-dischargeable, argues that this language incorporates those limits on dischargeability into the reorganization plan. Plaintiff argues that the second paragraph's general reference to § 1141 indicates a clear intent to invoke § 1141's general provision for dischargeability but not the specific exceptions created by § 1141(d)(2). The proper reading of the two paragraphs, Plaintiff asserts, is that all debts should be discharged subject to the procedures provided for in Sections 524 and 1141, not that debts should be discharged only to the extent provided for by those two sections.

Plaintiff's reading is plausible but by no means mandated by the plan's language. The plan's reference to § 1141 reasonably can be construed as a reference to the section in its entirety, and the section in its entirety necessarily includes the exceptions provided for by § 1141(d)(2). Thus, language that claims will be discharged "as provided for in 11 U.S.C. §§ 524 and 1141" appears to mean that claims will not be

discharged if sections 524 and 1141 do not provide for such discharge.

Plaintiff also argues that reading the second paragraph to limit dischargeability based on § 1141(d)(2)'s exceptions would conflict with the broadly inclusive language of the first paragraph, violating the principle of contract construction that all language should be given effect. This argument overlooks the "except as otherwise provided" language of the first paragraph, however, which expressly contemplates the possibility of an exception to the general discharge. Accordingly, the Bankruptcy Court made no error in finding the plan ambiguous.

■ The Bankruptcy Court also did not err in resolving that ambiguity in the IRS's favor.[1] Most importantly, prior to plan approval the IRS drafted a letter indicating its intent to collect gap interest, and Plaintiff's attorney responded with a letter stating that obtaining gap interest was "outside the scope of the plan, as was discussed at our meeting in late February." Declaration of Jay R. Weill, Exhibits 8 and 9. While these letters are parol evidence, they are highly probative towards the meaning each party attached to the ambiguous terms, and thus are not only admissible but also sufficient to justify the Bankruptcy Court's interpretation of the plan. *See In re Bennett*, 298 F.3d 1059 (9th Cir.2002). In addition, the Bankruptcy Court correctly noted that the interpretation urged by Plaintiff would effectively create a waiver of a statutory right, and that courts should only find such a waiver where the intent to waive is unequivocally clear. *Cathay Bank v. Lee*, 14

Cal.App.4th 1533, 1539, 18 Cal.Rptr.2d 420 (1993). An ambiguous plan obviously cannot evince such clear intent, and the Bankruptcy Court appropriately construed the plan to avoid such a waiver.

### B. Dischargeability

■ Even if the IRS is not barred by res judicata from asserting its gap interest claim, Plaintiff argues that this court should follow the 10th Circuit's holding in *Victor* and find that the plan discharged all secured claims. This Court rejects *Victor's* holding, however, and finds that *In re Gust* provides the better interpretation of the Bankruptcy Code.

As the IRS points out, the *Victor* court's reading of the Bankruptcy Code confuses taxes with claims. Section 523(a) states that certain types of debts cannot be discharged regardless of whether a claim is filed, and refers to § 507(a)(8)'s list of the types of taxes that fall within this category. The *Victor* court, however, citing language at the beginning of § 507(a)(8) referring to unsecured claims, held that § 523(a)'s exception only extended to unsecured claims for the listed types of taxes. The problem with this interpretation is that § 523(a) makes no reference to types of claims, and there is no reason to assume that it incorporates § 507(a)(8)'s preliminary language.

In addition, the *Victor* court's reading creates an unnecessary contradiction. *Victor* would effectively change § 523(a) to state that certain types of tax debts, for which an unsecured claim had been filed, could not be discharged regardless of whether or not a claim had been filed. Such a reading is nonsensical. The far

---

1. In his reply brief, Plaintiff asserts that his res judicata argument challenges only the 2000 summary judgment order, in which the Bankruptcy Court found his reorganization plan to be ambiguous, and not the court's December 5, 2001 oral findings and decision. Plaintiff's opening brief, however, appears to be directed at both decisions, and the substance of his arguments includes attacks on the court's methodology in resolving the ambiguity as well as upon the initial finding of ambiguity. Accordingly, this Court considers Plaintiff's appeal to be a challenge to each of the Bankruptcy Court's rulings.

simpler and more sensible reading, provided by *In re Gust,* is that § 523(a), by referring to "taxes of a kind" provided in § 507(a)(8), simply incorporates the list of types of taxes provided in § 507(a)(8), and that § 507(a)(8)'s language about unsecured claims is irrelevant to § 323(a)'s meaning.

The parties do not dispute that the taxes here at issue are of a kind described by § 507(a)(8); Plaintiff's argument turns entirely on the construction of the statute and the secured or unsecured nature of his claim. Since this Court holds that the type of debt, not the type of claim, determines whether discharge is possible, whether the IRS's claim was secured or unsecured is irrelevant; the claim was not discharged.

### V. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is affirmed.

IT IS SO ORDERED.