In re Robert BRAWDERS and
Cheryl Brawders, Debtors.

County of Ventura Tax Collector,
Appellant,

v.

Robert Brawders; Cheryl
Brawders, Appellees.

BAP No. CC–04–1165–MoPK.
Bankruptcy No. SV–00–15661–KL.
Adversary No. SV–00–01370–KL.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Jan. 20, 2005.

Filed May 10, 2005.

Donald O. Hurley, Esq., Assistant County Counsel, County of Ventura, Ventura, CA, for Appellant.

Michael D. Kwasigroch, Esq., Law Offices of Michael D. Kwasigroch, Simi Valley, CA, for Appellee.

Before MONTALI, PERRIS and KLEIN, Bankruptcy Judges.

### OPINION

MONTALI, Bankruptcy Judge.

In rare circumstances, the res judicata effect of a confirmed Chapter 13 plan can effectively avoid a creditor's lien or modify its in rem rights even if there is no valid legal basis for doing so, provided that the plan does so explicitly and due process considerations are met.[1]

Although the Chapter 13 plan in this case has language that clearly affects some secured creditors' rights, none of that language applies to the specific rights at issue here. Alternatively, even if the plan could be read to affect the secured creditor's rights, applying that strained reading in hindsight is no substitute for clear advance notice to the secured creditor, as required for due process. For each of these independent reasons, we REVERSE and REMAND a judgment awarding damages for violation of the automatic stay based on an erroneous interpretation of the effect of the confirmed plan.

### I. FACTS

Debtors Robert and Cheryl Brawders ("Debtors") have a long standing dispute with the County of Ventura Tax Collector ("Ventura") over the amount of real property tax assessments on their principal residence (the "House"). Debtors claim that the amount due was reduced to $9,350.00 in an earlier Chapter 13 case (Case No. ND–95–10521–RR, Bankr.C.D. Cal.) (the "First Case"), filed on February 8, 1995. Now, in their current Chapter 13 case (SV–00–15661–KL) (the "Second Case"), Debtors seek damages for Ventura's attempt to collect a higher amount.

Ventura's collection attempt was to issue a "Notice of Impending Tax Collector's

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

 We use the term "res judicata" in its generic sense—encompassing doctrines that have been more precisely called claim preclusion and issue preclusion as well as the codification in Section 1327 of the effect of confirmation. We use this broad terminology because there is some ambiguity about which doctrine Debtors rely upon and our reasoning applies to all such doctrines. *See generally Paine v. Griffin (In re Paine)*, 283 B.R. 33, 38–39 (9th Cir. BAP 2002) *and The Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549 (9th Cir. BAP 2002) (each discussing res judicata and collateral estoppel terminology).

Power to Sell" on June 2, 1997, asserting $30,264.32 in past due taxes (the "Tax Lien Notice"). Ventura sent that notice after confirmation of Debtors' Chapter 13 plan in the First Case (the "Plan") but before the House had revested in Debtors. Ventura admits that sending the Tax Lien Notice violated the automatic stay, though it disputes whether this resulted in any damage to Debtors and it denies that the First Case had any effect on its lien rights or reduced the amount of its tax assessment.[2]

Ventura sent a copy of the Tax Lien Notice to Debtors' mortgage lender ("Bank"). Bank responded by making a payment to Ventura, without notice to Debtors, and then demanding reimbursement. This and other disputes with Bank precipitated Debtors' filing of this Second Case on June 14, 2000.

On June 27, 2000, Debtors filed an adversary proceeding against Ventura (SV–00–01370–KL). Bank was also named as a defendant but was later dismissed based on a consensual resolution involving refinancing the House and paying Bank. In their second amended complaint Debtors sought damages for issuance of the Tax Lien Notice, among other things.

On Ventura's motion for summary judgment the bankruptcy court entered an order stating that Ventura had violated the automatic stay and leaving for trial an accounting and the amount of attorneys' fees and other damages to be awarded.[3] The bankruptcy court simultaneously entered a "Memorandum on Legal Issue: The Effect of the Provision for the County's Claim and Lien Interest in the Plan Confirmed in Case No. ND 95–10521 RR" (the "Res Judicata Decision") which determined that Debtors' House had revested in them "free of any lien interest held by [Ventura] on account of its pre-petition claims" and that those claims had been reduced by the Plan to $9,350.00. There is no dispute that if Ventura's tax assessments are reduced to that amount then it was overpaid by Bank and Debtors, and Ventura will owe Debtors a refund of $12,905.00.

By a subsequent motion Debtors also sought to recover their expenses associat-

---

**2.** Under Debtors' Chapter 13 plan in the First Case the Property remained in the bankruptcy estate until Debtors received their discharge, which was not until November 15, 2000. *See* 11 U.S.C. § 1328(a). Section 362(c)(1) provides that, with some exceptions, "the stay of an act against property of the estate" continues "until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1).

**3.** As noted in the text, the bankruptcy court's order was actually entered on Ventura's motion for summary judgment. The excerpts of record and the bankruptcy court's docket do not reflect any cross-motion for summary judgment by Debtors, but the bankruptcy court's order states "Fourth Cause of Action-(Violation of the Automatic Stay against County) [¶] *Grant in favor of the Plaintiffs [i.e. Debtors]."* (Emphasis added.) Debtors appear to assume that the bankruptcy court intended not merely to deny Ventura's motion for summary judgment but to grant affirmative relief to Debtors. They argue on this appeal that Ventura was bound to appeal this alleged ruling within ten days. *See* Fed. R. Bankr.P. 8002(a).

We reject Debtors' argument. Even if we were to assume that the bankruptcy court intended to grant affirmative relief to Debtors (and without suggesting that the bankruptcy court intended to do so or properly could do so), such a ruling would not be final because an accounting and a determination of damages remained for trial. *See generally Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc.,* 873 F.2d 1327, 1329 (9th Cir. 1989) (order awarding attorney's fees which does not fully dispose of amount of fees is not a final, appealable order). *See also Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1186 n. 10 (9th Cir.2003) (citing with approval authority that order establishing liability under § 362(h) but not quantifying damages is not final).

ed with refinancing their House to reimburse Bank for what it had paid to Ventura, the alleged cost of a higher interest rate for their refinance when the new lenders learned that the loan was in default, over $40,000.00 in attorneys' fees and costs, and pre-judgment interest. On June 19, 2003, the bankruptcy court issued a "Memorandum on Trial and Motion for Attorneys Fees and Costs" (the "Damages Decision") awarding $39,668.21 to Debtors, including the $12,905.00 for tax overpayments. The bankruptcy court entered a judgment, Debtor appealed,[4] and Ventura cross-appealed. Before us is the cross-appeal.

4. We dismissed debtors' appeal for lack of prosecution.

5. Ventura argued before the bankruptcy court that there is no jurisdiction under Section 362(h) to award damages in this Second Case for a stay violation in the First Case. Ventura has not raised that argument on this appeal, and although we have an independent obligation to determine if we lack jurisdiction we are satisfied that the bankruptcy court did have jurisdiction to award such damages and therefore we have jurisdiction to review that award on appeal. This is not a case in which there are concurrent bankruptcy proceedings involving different debtors, where the actions of one bankruptcy court might impinge on the jurisdiction of the other, or violate principles of comity. *See, e.g., Snavely v. Miller (In re Miller)*, 397 F.3d 726 (9th Cir.2005) (citing inter alia *In re Shared Technologies Cellular, Inc.*, 293 B.R. 89 (D.Conn.2003)). Rather, there is only one pending bankruptcy case involving the Debtors, who have asked the bankruptcy court to determine the res judicata effect of an order in a different case. Courts do this all the time. *See Valley Nat. Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335–36 (9th Cir.1997) (proper remedy if second court erred in not giving res judicata effect to first court's judgment is to appeal second court's determination, not collateral attack in third court). Moreover, these Debtors returned to the very same bankruptcy court (although a different bankruptcy judge). We have no difficulty in concluding that the bankruptcy court in the Second Case had

## II. JURISDICTION

■ The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and 157. We have jurisdiction over this final judgment that determines the amount of damages for Ventura's violation of the automatic stay. 28 U.S.C. § 158(a) and (b). *See Dyer*, 322 F.3d at 1186 and n. 10.[5]

## III. ISSUE

Did the bankruptcy court err in awarding damages, based on its conclusion that res judicata reduced the enforceable amount of Ventura's lien to the amount stated in Debtors' Plan?[6]

jurisdiction to determine the res judicata issues and decide whether to award damages under Section 362(h). *See Williams v. Levi (In re Williams)*, 323 B.R. 691 (9th Cir. BAP 2005) (ancillary jurisdiction in third bankruptcy case to annul stay in second bankruptcy case); 28 U.S.C. § 1367 (codification of supplemental jurisdiction).

6. Debtors argue that this appeal is moot and frivolous because Ventura stipulated to what it owes Debtors in tax assessment overpayments (the "Tax Stipulation"). Debtors did not provide us with a copy of the Tax Stipulation until their motion to augment the record filed one week prior to oral argument before us, but the excerpts of record do include an order approving the Tax Stipulation and the Judgment does incorporate approximately the amount stipulated ($12,905.00, whereas the Tax Stipulation amount is $12,905.86). Nevertheless, having reviewed the Tax Stipulation we agree with Ventura that it resolves only the "accounting" and not the in rem tax "liability" issues. Therefore, this appeal is neither moot nor frivolous.

Debtors also allege that this appeal is untimely. As Ventura points out, the Res Judicata Order and the order approving the Tax Stipulation were both interlocutory. *See generally Jensen Elec. Co.*, 873 F.2d at 1329; *Dyer*, 322 F.3d at 1186 n. 10. Debtors' notice of appeal from the Judgment extended the time for Ventura to file its notice of cross-appeal, and that notice was timely. *See* Fed. R. Bankr.P. 8002(a).

## IV. STANDARDS OF REVIEW

 We review de novo the res judicata effect of a Chapter 13 plan and interpretation of the Bankruptcy Code and Rules, because these matters are legal issues or mixed questions of law and fact in which legal issues predominate. *George v. Morro Bay (In re George)*, 318 B.R. 729, 732–33 (9th Cir. BAP 2004); *Wells Fargo Bank v. Yett (In re Yett)*, 306 B.R. 287, 290 (9th Cir. BAP 2004). Interpretation of the contractual terms of a Chapter 13 plan is generally a factual issue which we review for clear error (*Yett*, 306 B.R. at 290) but such factual issues can become mixed with legal issues. Whether a contract is ambiguous is a matter of law, which we review de novo. *Miller v. United States (In re Miller)*, 253 B.R. 455, 458 (Bankr.N.D.Cal. 2000) ("*Miller I*") (citing cases), *aff'd*, 284 B.R. 121 (N.D.Cal.2002) ("*Miller II*").

 In this case we need not decide which standard applies to interpretation of the Plan because we would reach the same result whether we reviewed the bankruptcy court's interpretation for clear error or de novo. Whether adequate notice has been given for purposes of due process in a particular instance is a mixed question of law and fact that we review de novo. *Educ. Credit Mgmt. Corp. v. Repp (In re Repp)*, 307 B.R. 144, 148 (9th Cir. BAP 2004).

## V. DISCUSSION

There is no question that Ventura violated the automatic stay by sending the Tax Lien Notice. The question is what damages are appropriate, if any.

The bankruptcy court held Ventura partly responsible for Debtors' legal fees and the costs associated with resolving their disputes with Bank, including some of the costs of refinancing their House to repay Bank what it had paid Ventura. The bankruptcy court also awarded Debtors $12,905.00 based on its view that Ventura's lien had been reduced to $9,350.00 by the res judicata effect of the Plan and by Section 1327, which states in full:

§ 1327. *Effect of confirmation*

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

 It is well established that principles of res judicata and finality, as partly codified in Section 1327, can make even "illegal" provisions of a Chapter 13 plan binding. *See Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083 (9th Cir.1999) (student loan debt discharged by confirmation of Chapter 13 plan so providing, even though debt may have been nondischargeable); *Multnomah County v. Ivory (In re Ivory)*, 70 F.3d 73 (9th Cir.1995) (res judicata precluded collateral attack on confirmation order, despite possible jurisdictional error).[7]

7. These concepts are more fully explicated in *Associated Vintage Group*, 283 B.R. 549, 554– 65.

■ This general proposition is subject to some major limitations. The starting point is that a debtor asserting res judicata "has the burden of proof on all elements and bears the risk of non-persuasion." *Repp*, 307 B.R. at 148 n. 3 (citations omitted).

■ Next, a plan should clearly state its intended effect on a given issue. Where it fails to do so it may have no res judicata effect for a variety of reasons: any ambiguity is interpreted against the debtor, any ambiguity may also reflect that the court that originally confirmed the plan did not make any final determination of the matter at issue, and claim preclusion generally does not apply to a "claim" that was not within the parties' expectations of what was being litigated, nor where it would be plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme. *See Miller I*, 253 B.R. at 456–59, *aff'd, Miller II*, 284 B.R. at 124; *Repp*, 307 B.R. at 148 n. 3; *Associated Vintage Group*, 283 B.R. at 554–65.

■ Another major limitation is that due process requires adequate notice and procedures. *See, e.g., Repp*, 307 B.R. at 149–54 (notice requirements); *Enewally v. Wash. Mutual Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir.), *cert. denied, —— U.S. ——*, 125 S.Ct. 669, 160 L.Ed.2d 497 (2004) (confirmation has no preclusive effect on matters requiring adversary proceeding, or where plan does not give adequate notice of proposed treatment).

■ The foregoing limitations on res judicata principles are particularly apropos when secured claims are involved. Absent some action by the representative of the bankruptcy estate, liens ordinarily pass through bankruptcy unaffected, regardless whether the creditor holding that lien ignores the bankruptcy case, or files an unsecured claim when it meant to file a secured claim, or files an untimely claim after the bar date has passed. *See Bisch v. United States (In re Bisch)*, 159 B.R. 546, 550 (9th Cir. BAP 1993) ("there is no duty on the part of the secured party to object to the confirmation of the [Chapter 13] plan, and failure to do so does not somehow constitute a waiver of the party's secured claim"); *Work v. County of Douglas (In re Work)*, 58 B.R. 868, 869 (Bankr. D.Or.1986). *See also Enewally*, 368 F.3d at 1168–72 and n. 2 (noting implications of "Fifth Amendment's prohibition against taking private property without compensation") (citation and quotations marks omitted). There is no dispute that Ventura's assessments are secured by a lien because California law provided as of the filing date of the Second Case that "[e]very tax on real property is a lien against the property assessed." Cal. Rev. & Tax.Code § 2187 (West 1998).

Applying the above principles to this case, Debtors have not met their burden to establish that their Plan had any res judicata effect on Ventura's lien rights or the amount of its assessments.

a. *The Plan only purports to affect Ventura's claim against the estate, not the amount of the underlying assessment debt or Ventura's in rem rights*

■ The Plan is a stationer's form with blanks filled in by Debtors. Debtors rely on form language stating that the present value of distributions under the Plan on account of secured claims "is equal to the allowed amount of such claim." Debtors take this language out of context. The full provision states:

III. *CLASSIFICATION AND TREATMENT OF CLAIMS*

 \* \* \* \* \* \*

2. *CLASS TWO*—Claims secured by Real Property that is the debtor's

PRINCIPAL RESIDENCE. The value as of the effective date of the Plan, of the series of payments to be distributed under the Plan on account of each secured claim provided for by the Plan, *is equal to the allowed amount of such claim.* Defaults shall be cured using a discount rate of 7 % per annum. Any obligation maturing by its terms before termination of this Plan shall be paid on or before its due date. *Each creditor shall retain its lien.* [Emphasis added.]

| | Amount in Default | Monthly Payment | Number of Months | Total Payment |
|---|---|---|---|---|
| National Mortgage Co. * * * | *$4,244* | $ 84.04 | # 60 | $ 5,042.62 |
| [Ventura] [Emphasis added.] | *$9,350* | $185.15 | # 60 | $11,109.21 |

The above provision is geared toward typical debtors who may have fallen behind in mortgage payments on their principal residence. Debtors' treatment of National Mortgage Co. ("National") illustrates how this provision works.

At oral argument we confirmed that National is the holder of a consensual mortgage or deed of trust debt against Debtors' House and that the $4,244.00 listed is the arrearage amount, not the total amount of the debt. Under the Plan, Debtors' $4,244.00 of arrearages were to be repaid to National over the term of the Plan but, as Debtors' attorney confirmed, the Plan does not purport to reduce the underlying mortgage debt owed to National, nor does the Plan affect National's rights to enforce its lien in that total amount upon any default. Therefore, when the Plan states that its distributions to class two (the distributions on the "amount in default") will be equal in value to the allowed amount of the creditor's "claim," it is using common Chapter 13 parlance to refer to the arrearage *not* the total amount of the debt.

Debtors read the word "claim" as referring to the underlying debt, and they read the Plan as reducing that debt to the "amount in default" listed in class two; but if that were so then Debtors' entire mortgage debt (perhaps several hundred thousand dollars) would be reduced to the amount in default ($4,244.00). Not only is that a very strained reading but it would be prohibited by the Bankruptcy Code, which generally bars any modification of the rights of creditors holding claims "secured only by a security interest in real property that is the debtor's principal residence" (except to cure defaults over a reasonable time). *See* 11 U.S.C. § 1322(b)(2), (b)(5), and (c). It would be inconsistent to read the Plan's boilerplate language to modify precisely the types of claims that cannot be modified.

At oral argument Debtors' attorney argued that the outcome should be different for Ventura because it is not a consensual lender. We are not persuaded. It is true that the antimodification provisions of Section 1322(b)(2) apply only to consensual liens (*see* 11 U.S.C. §§ 101(51) and 1322(b)(2)), but the meaning of the Plan does not change based on the character of the debt. Debtors cannot read the same language in class two one way for National and another way for Ventura.

Debtors' attorney also argued that tax debts typically are equal to the entire amount of the underlying tax, implying that Ventura should have known that what was being modified was the underlying debt, not just what it was to receive out of Chapter 13 Plan payments. The fact that the underlying debt to Ventura may equal or approximate any arrearage has nothing to do with whether the Plan purports to affect the underlying debt or the lien securing that debt.[8] All that the Plan did

---

8. In fact, the total amount of property tax

debt may be different from the "amount in

was to limit what Ventura would be paid from the bankruptcy estate. It did not purport to affect the underlying assessment debt to Ventura or its in rem rights.

Debtors' reading is also out of context with the rest of the Plan. Included in the Plan is a motion to avoid creditors' liens that impair exemptions. *See* 11 U.S.C. § 522(f). It clearly warns that Debtors intend "to treat such creditors as unsecured creditors only" and that any objection must be filed *"within 20 days from the date this motion and plan is served on you."* [Emphasis in original.] There is no similar notice, or any notice at all, to warn creditors in class two of Debtors' interpretation of the Plan as effectively stripping liens down to the amount of arrearages.

Another provision of the Plan actually does propose to strip liens to the alleged value of the collateral, but it gives clear notice that this is what is intended. *See* 11 U.S.C. § 506(a). It specifies the precise dollar amounts for the "total amount of debt," the "secured claim," and the "unsecured amount." In contrast, the Plan's provision concerning class two does not mention the total amount of debt, it refers only to the "[a]mount in default," and it provides that "[e]ach creditor shall retain its lien."

These differences illustrate once again that the class two portion of the Plan concerns arrearages, not the total amount of the underlying debt or the lien securing that debt. Debtors have not met their burden to establish that the Plan purported to have any effect on the amount of Ventura's tax assessment or its lien rights. *See generally Miller I*, 253 B.R. 455, *aff'd Miller II*, 284 B.R. 121 (refusing to apply ambiguous plan provision against creditor under res judicata principles).

default" that is placed in class two of the Plan. Taxes can be assessed but not yet "in

b. *Alternatively, applying any reading of the Plan that would affect the underlying debt to Ventura or its lien rights would violate due process*

■ Even if the Plan could be read as Debtors suggest, that meaning is hardly clear enough to have given Ventura adequate notice in the First Case to satisfy due process. Debtors did not combine confirmation of their Plan with an adversary proceeding seeking a declaratory judgment or partial lien avoidance limiting Ventura's in rem rights, nor did the Plan give notice that Debtors had any such intent. *See* Fed. R. Bankr.P. 3007 (claims objections) and 7001(1), (2), and (9) (adversary proceeding required for avoidance of lien, or determination of its "validity, priority, or extent," or declaratory judgment of same).

As the Ninth Circuit stated in *Enewally:*

> Although confirmed plans are res judicata to issues therein, *the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice* to the creditor.
>
> \* \* \* \* \* \*
>
> "[I]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect." *Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 93 (4th Cir.1995) (quoting *In re Beard,* 112 B.R. 951, 956 (Bankr.N.D.Ind.1990)).

*Enewally,* 368 F.3d at 1173 (emphasis added). *See also Shook v. CBIC (In re Shook),* 278 B.R. 815, 824 (9th Cir. BAP

default."

2002) (plan can effectively determine value and/or avoid a lien only if creditor receives "clear notice" that the plan will do so).

Debtors argue that the order confirming the Plan states, "The court finds that the plan meets the requirements of 11 U.S.C. § 1325," implying that such requirements were "actually litigated." Section 1325 provides that, unless collateral is surrendered or the holders of allowed secured claims agree otherwise, they must retain their liens and the value of distributions under the Chapter 13 plan must be "not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5).

If this is Debtors' argument it misreads *Enewally*. Nothing in the excerpts of record suggests that as part of their Plan confirmation process Debtors submitted evidence for what amounts to a declaratory judgment that the tax assessments were only $9,350.00. Nor is there any evidence that Ventura had adequate notice that this was at issue and that Debtors would treat confirmation as the equivalent of an adversary proceeding. *See Repp*, 307 B.R. at 152–53 (creditor entitled to expect that adversary proceeding rules will be applied when required).

An adversary proceeding is commenced by the filing of a complaint and service of a summons and the complaint on the defendant. Fed. R. Bankr.P. 7003 and 7004. Thus, the creditor is specifically put on notice that the validity of its lien is at issue and that it must respond in order to preserve its rights.

If the process contemplated by the applicable rules is not followed, a creditor's rights can be affected only if the requirements of due process are otherwise met. *See GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 662 (9th Cir. BAP 1999) (the greater the deviation from the process set out in the rules, "the great-

er the quality and amount of notice needed in order to comply with due process").

As we have held in an analogous Chapter 11 case involving claim objections under Rule 3007:

> Neither the statute nor the rules say, "oh, by the way, we [plan proponents] can also sandbag you by sneaking an objection into a reorganization plan and hoping you do not realize that we can use this device to circumvent the claim objection procedure mandated by the rules." That is not the law, and if it were the law, it would be a material disservice to public confidence in the integrity of the bankruptcy system.

> While we do not hold that a plan can never be used to object to a claim of a creditor who does not actually consent to such an objection, by holding that the essence of Rule 3007 must be complied with, we are holding that *considerations of due process mandate great caution and require that the creditor receive specific notice (not buried in a disclosure statement or plan provision) of at least the quality of specificity, and be afforded the same opportunity to litigate one-on-one, as would be provided with a straightforward claim objection under Rule 3007.*

*Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 497 (9th Cir. BAP 2003) (emphasis added). *See also In re Millspaugh*, 302 B.R. 90, 100 at nn. 20–21 (Bankr.D.Idaho 2003) (applying *Dynamic Brokers* in Chapter 13 context).

At oral argument both counsel suggested that the bankruptcy court in this Second Case was concerned about Ventura being permitted to ignore the First Case and still pursue its in rem remedies at some later date. That concern reverses the parties' burdens. It was Debtors' burden to bring an action for declaratory re-

lief as to the amount of taxes owed, or to avoid Ventura's lien or otherwise limit its in rem rights. We have already held that the Plan did not even purport to do this; but assuming for the sake of argument that the Plan could be read as Debtors suggest, that reading is too obscure to satisfy Ventura's due process rights. Therefore the Plan has no·res judicata effect on the amount or enforceability of Ventura's lien against Debtors' real property.

This does not mean that Ventura was entitled to receive payments from the bankruptcy estate greater than what was provided in the Plan. Ventura did not file a timely proof of claim in the First Case and it withdrew its untimely claim, so the only Chapter 13 payments to which Ventura was entitled were those that Debtors provided in the Plan—$9,350.00 over time, with interest. In addition, though, Ventura retained its in rem rights against Debtors' House, and those rights and the amount of the underlying debt owed to Ventura have not been affected by confirmation of Debtors' Plan in the First Case. Ventura was also entitled to accept payments from Bank (which undoubtedly paid Ventura to protect its security interest from being eroded by the penalties and interest that might accrue if Ventura continued to remain unpaid).

Our conclusions are consistent with the authority cited by the bankruptcy court and by Debtors. The bankruptcy court cited *Andrews v. Loheit (In re Andrews),* 49 F.3d 1404 (9th Cir.1995), and *Work,* 58 B.R. 868, for the proposition that the "treatment provided in the Plan was consistent with 11 U.S.C. § 1325(a)(5)(B)." As noted above, that section of the Bank-

ruptcy Code generally requires that secured creditors receive the present value of their allowed claim over time. *See* 11 U.S.C. § 1325(a)(5)(A) and (B).

It is true that Ventura waived any rights under Section 1325(a)(5) by not asserting a claim or objecting to the Plan. Out of the Plan payments Ventura was entitled to no more than what the Plan provided. *See Andrews,* 49 F.3d at 1409. That does not, however, eviscerate Ventura's lien rights or reduce the total amount of assessments secured by its lien. Section 1325(a)(5) is irrelevant to our analysis.

The reasoning in *Work* supports our analysis. Section 1327(c), on which Debtors' rely, says that confirmation of a Chapter 13 plan vests property of the estate in the debtor "free and clear of any claim or interest" of a creditor provided for in the plan. As *Work* observed, claims and interests are not the same thing. "Claim" is defined in § 101(5), and includes a "right to payment" or "right to an equitable remedy." 11 U.S.C. § 101(5). "Interest" is not defined in the Bankruptcy Code, but must mean something different from "claim."

> If, for the purposes of § 1327(c), the term "claim" was meant not only to include claims against the debtor but also claims against property of the debtor, then use of the term "interest" would be superfluous. By use of the term "interest" it appears that the term "claim" was to have a more limited meaning than that used in § 102(2).[9] It is appropriate that the Court determine in factual circumstances such as in the present case, that the term "claim" include those debts upon which the debtor has personal liability and the term "interest" cover

9. Section 102(2) provides that " 'claim against the debtor' includes claim against property of the debtor[.]" 11 U.S.C. § 102(2). Therefore, although Ventura's ad

valorem taxes are not Debtors' personal liability they are still a claim against the bankruptcy estate.

claims against property of the debtor. The term "claim" would refer to debts which would be discharged under § 1328 and the term "interest" would refer to liens or interests in property which would be unaffected by a discharge under § 1328.

*Work,* 58 B.R. at 871.

Under this reasoning, a plan that provides for a claim but does not provide for an interest in property securing that claim does not affect the interest of the creditor in the property. The property vests free of the claim, but not free of the interest, which in this case is the lien of Ventura.

On this appeal Debtors also cite *Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118 (9th Cir.1983), and *Ivory,* 70 F.3d 73. Neither case is contrary to our analysis.

■ In *Gregory* the Ninth Circuit held that the holder of "a large, *unsecured* claim" receives adequate notice for purposes of due process when it receives "any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings" because "it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Gregory,* 705 F.2d at 1123 (emphasis added). The Ninth Circuit's specific reference to an unsecured claim is important. Unsecured claims invariably are affected by bankruptcy. In contrast, as we have noted, in rem rights generally pass through bankruptcy unaffected. Therefore, unlike unsecured creditors, secured creditors may ignore the bankruptcy proceedings and look to the lien for satisfaction of the debt. *Work,* 58 B.R. at 869.

In *Ivory,* the Ninth Circuit held that even if the bankruptcy court had been in error by permitting the debtor to redeem property after the redemption period had expired, res judicata precluded the creditor from bringing what amounted to a collateral challenge to the confirmation order. *Ivory,* 70 F.3d at 74–75. This was so, the court held, even if the bankruptcy court's error was jurisdictional. *Id.* at 75.

*Ivory* is inapposite because the issue determined by res judicata was the redemption period, not a purported reduction of a secured claim that would otherwise pass through bankruptcy unaffected. There is no discussion in *Ivory* of due process, and the decision says nothing about what notice the county in that case received or how that Chapter 13 plan was worded. Most tellingly, the plan in *Ivory* purported to affect the creditor's rights whereas here the Plan does not purport to affect Ventura's lien or determine the proper amount of Ventura's assessments under applicable law.

As stated by the Ninth Circuit in a Chapter 11 case:

> If [the debtor] intended [the amount of the creditor's claim stated in a Chapter 11 plan] as a means of challenging the amount of [the creditor's] claim, he picked a peculiar way of going about it, hardly consistent with his fiduciary obligations to a creditor of the estate. While the debtor may challenge any claim he believes in good faith should not be allowed, he must do so by raising the issue squarely with the court and giving the affected creditor an opportunity to respond.

*Everett v. Perez (In re Perez),* 30 F.3d 1209, 1215 (9th Cir.1994) (citation and footnote omitted).

In this case, if Debtors intended the Plan to reduce the amount of Ventura's tax assessments or affect its rights to enforce the full amount of its lien, they needed to raise these issues squarely with the court and Ventura. The need for clear notice is especially high in cases like this because a

plan can be confirmed very quickly in a Chapter 13 case—as little as 30 days in local practice, according to Ventura. *See* Fed. R. Bankr.P. 3015(b) (Chapter 13 plan may be filed with petition) and 2002(b) (25 days' notice by mail of time fixed for filing objections and hearing to consider confirmation of Chapter 13 plan). No strained reading of the Plan can amount to the clear notice and procedural protections to which Ventura would have been entitled if Debtors had properly sought relief under the Bankruptcy Code and Rules.

For the foregoing reasons, we disagree with Debtors' reading of the Plan and its alleged res judicata effect. Confirmation of the Plan did not reduce the amount of Ventura's tax assessments or affect its lien rights.

Ventura claims that all of the damages flow from the res judicata issue. We agree with Ventura that the underlying debt was not reduced to $9,350.00 by any res judicata effect, so Ventura does not owe Debtors a refund of $12,905.00, but it is less clear how Debtors' other damage claims might be affected. On remand the bankruptcy court can determine whether in view of our reversal on the res judicata issue Debtors are entitled to any portion of the damages previously awarded.

## VI. CONCLUSION

Debtors argue that the res judicata effect of their confirmed Plan reduced the amount of Ventura's tax assessments to $9,350.00 and revested their House in them free and clear of Ventura's lien in any greater amount. Nothing in the Plan, however, purports to affect Ventura's lien rights or act as a declaratory judgment on the proper amount of tax assessments.

Alternatively, even if the Plan could be read as Debtors now propose, Ventura did not receive the clear notice and procedural protections that due process requires. If Debtors wanted what amounts to a declaratory judgment as to the proper amount of tax assessments, or a partial avoidance of Ventura's lien, they should have filed an adversary proceeding.

For each of these alternative reasons, the res judicata effect of the Plan did nothing to reduce the amount of Ventura's underlying tax assessments or affect Ventura's lien rights. Any award of damages for violation of the automatic stay must be reconsidered in light of these conclusions.

Accordingly, we REVERSE and REMAND.