In re Jackie A. BENNETT, Debtor.

Jackie A. Bennett, Plaintiff

v.

Springleaf Financial Services, Defendant.

Bankruptcy No. 11–32916.
Adversary No. 11–3255.

United States Bankruptcy Court, S.D. Ohio, Western Division, at Dayton.

Jan. 12, 2012.

Andrew Zeigler, Thompson & Deveny Co. LPA, Dayton, OH, for Plaintiff.

Stephen D. Miles, Dayton, OH, for Defendant.

**Decision Granting Plaintiff's Motion for Summary Judgment**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

This decision concerns whether the value of the debtor's residence set forth in

the debtor's appraisal, filed with the court in accordance with a local bankruptcy rule prior to confirmation of the debtor's Chapter 13 plan, is binding on a junior mortgagee upon confirmation of the plan for purposes of stripping off that creditor's lien as "wholly unsecured" in a separate adversary proceeding when the Chapter 13 plan expressly provides that the value in the appraisal shall be binding upon creditors absent objection, no objection to that value is filed, and the plan is confirmed. Based upon the specific language of the plan and the binding effect of confirmation, the court finds that the appraised value is binding on the mortgagee and, accordingly, the court grants summary judgment in favor of the debtor avoiding the mortgagee's lien as being wholly unsecured.[1]

## II. Facts and Procedural Background

On May 25, 2011 the debtor, Jackie A. Bennett ("Bennett"), filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code" or the "Code");[2] her Schedules and Statement of Financial Affairs (est. doc. 1); a Chapter 13 plan (the "Plan") (est. doc. 5); and an appraisal report (the "Appraisal") (est. doc. 7). Her residence in Fairborn, Ohio (the "Property") was scheduled as having a value of $120,000 (Schedule A), with Bank of America Mortgage, Inc. having a first mortgage securing a claim in the amount of $126,133 and Springleaf Financial ("Springleaf") having a second mortgage securing a claim in the amount of $9,258 (Schedule D). *See* est. doc. 1. The Appraisal assigned a value of $120,000 to the Property (estate doc. 7). Thus, the schedules, Appraisal, and other

papers filed by Bennett take the position that there is no value in the Property attaching to Springleaf's second mortgage.

The meeting of creditors required by § 341 was held on June 28, 2011. *See* est. doc. 9 and July 1, 2011 docket entry. On that same date, Springleaf filed a proof of claim in the amount of $9,898.37 and secured by an open-end mortgage on the Property (Proof of Claim 7–1) ("Proof of Claim"). The Proof of Claim provides a value of $140,000 for the Property. On July 21, 2011, the day following the court's entry of an order confirming Bennett's Plan, she filed an objection to the Proof of Claim, seeking to have it reclassified as a nonpriority unsecured claim on the basis of there being no value in the Property to which Springleaf's claim attaches (est. doc. 17). Springleaf responded to Bennett's objection to its claim, stating that the value of the Property exceeded the amount owed on the first mortgage on the Property and, therefore, Springleaf's claim should be determined to be an allowed secured claim (est. doc. 23).

No objection to the Plan or to the value set forth in the Appraisal was filed, and the court entered an order confirming the Plan on July 20, 2011 (est. doc. 16). Five days later, Bennett commenced this adversary proceeding seeking to strip Springleaf's lien as being wholly unsecured. The court has subsequently entered orders in the both the estate case and this adversary proceeding consolidating this adversary proceeding and the contested matter arising out of Bennett's objection to the Proof of Claim (adv. doc. 12 and est. doc.

---

1. *Lane v. Western Interstate Bancorp, (In re Lane)*, 280 F.3d 663 (6th Cir.2002) (despite the language of 11 U.S.C. § 1322(b)(2), a junior mortgage granted on a debtor's primary residence may be avoided if it is unsupported by any equity).

2. Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532 (the "Code"), cited hereinafter in this decision as "§ _____".

24) for purposes of adjudication. These consolidated matters are now before the court on Bennett's motion for summary judgment.

### A. *Bivens*

This is the second time recently that the court has addressed under what circumstances a value placed on a residence during the Chapter 13 confirmation process may be binding on the holder of a junior mortgage in a subsequently filed adversary proceeding.[3] In *Bivens v. M & I Bank FSB*[4] this court considered an issue similar to the issue presented in this case, but involving different factual circumstances.

In *Bivens* the debtors stated in their Chapter 13 plan that the value of their residence was $42,000. However, they also provided in their plan that they would be filing an adversary proceeding to avoid the second mortgage as being wholly unsecured. Specifically, the Amended Plan stated as follows:

> 3. This judge and the Dayton location of the United States Bankruptcy Court for the Southern District of Ohio have construed Bankruptcy Rule 7001(2) to require that an adversary proceeding be commenced and prosecuted to strip off a mortgage lien under *Lane v. Western Interstate Bancorp. (In re Lane)*, 280 F.3d 663 (6th Cir.2002). The courts across the country, and even the bankruptcy judges within this District, are split on whether an adversary proceeding is required to strip off such a lien. Some reported decisions have held that an adversary proceeding is not required, either determining a plan provision is sufficient or only requiring a motion, rather than an adversary proceeding. See, *e.g.*, *In re Hill*, 304 B.R. 800, 804–05 (Bankr.S.D.Ohio 2003) ("[T]he court holds that a Chapter 13 debtor can avoid a mortgage, on the sole basis that the mortgage is alleged to be wholly unsecured, without initiating an adversary proceeding or objecting to a proof of claim timely filed by the mortgagee. The debtor can accomplish this objective

> There is a second mortgage on this property held by **M & I Bank FSB** .... The balance on the second mortgage is **$32,787.74**. **M & I Bank FSB** is to be paid as a Class five creditor with zero interest. There is no equity in the property to support paying the debt to **M & I Bank FSB** as a secured creditor. Debtors will object to any claim of M & I Bank FSB on this property that is filed as a secured creditor. Debtors will file an adversary complaint to strip this mortgage from the property and have the mortgage cancelled of record.

*Bivens* at \*3 (bold in original). The debtors in *Bivens* also included similar language in their objection to the second mortgagee's proof of claim. In an agreed order addressing the claim objection, the parties agreed that "the pending Proof of Claim Objection shall be resolved through the adversary proceeding." As will be discussed, the Dayton Chapter 13 Trustee's form plan also was different than the form plan used in this case.

> through the plan confirmation process pursuant to § 1327(c)."); *In re Hudson*, 260 B.R. 421, 433 (Bankr.W.D.Mich.2001) (An adversary proceeding is not required to value a creditor's collateral, determine secured status, or to modify a secured creditor's rights in Chapter 13) and *In re Bennett*, 312 B.R. 843, 848 (Bankr.W.D.Ky.2004) (An adversary proceeding is not required to strip off a wholly unsecured mortgage, but the debtor should file a separate motion with the plan of reorganization). However, other courts have held that an adversary proceeding is required to strip a mortgage lien. See *SLW Capital, LLC v. Mansaray–Ruffin (In re Mansaray–Ruffin)*, 530 F.3d 230 (3rd Cir.2008); *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995) and *In re Burner*, 321 B.R. 432, 434–36 (Bankr. N.D.Ohio 2004).

> 4. *Bivens v. M & I Bank FSB (In re Bivens)*, Case No. 08–31447, Adv. No. 08–3361 (Bankr.S.D.Ohio Sept. 30, 2009).

In *Bivens* this court first noted that the primary lens through which the issue of whether the value placed in the Bivens' Chapter 13 plan bound M & I Bank in the adversary proceeding was due process because the United States Constitution, and in particular the due process requirement under the Fifth Amendment, trumps the Bankruptcy Code and Rules and those "may not be used to circumvent constitutional due process requirements." *Flynn v. Bankowski (In re* Flynn), 402 B.R. 437, 445, n. 11 (1st Cir. BAP 2009).

Within that due process framework, this court first concluded that an adversary proceeding was not required to establish the value of property for lien avoidance purposes. The court concluded that § 506(a) and Federal Rule of Bankruptcy Procedure 3012 and precedent of this court provide for value determinations to be made through contested matters, specifically stating that:

> § 506(a) anticipates that the value of property will be determined "in conjunction with any hearing ... on a plan affecting [a] creditor's interest", including in conjunction with a confirmation hearing on a Chapter 13 plan. *See Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069, 1072 (11th Cir.1990) (Valuation of property may be conducted in conjunction with confirmation of plan; there is no requirement of a separate hearing); *In re Holmes*, 225 B.R. 789, 793 (Bankr. D.Colo.1998) (Value of property may be determined as part of the Chapter 13 confirmation hearing).

*Bivens* at \*10. The court noted that Bankruptcy Rule 3012 allows the value of property to be determined by motion:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

Fed. R. Bankr.P. 3012. The court further noted that:

> The 1983 Advisory Committee Note to BR 3012 states that:
>
> > The valuation of secured claims may become important in different contexts, e.g. to determine the issue of adequate protection under § 361, impairment under § 1124, or treatment of the claim in a plan....
> >
> > \* \* \* \*
> >
> > An adversary proceeding is commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001. That proceeding is relevant to the basis of the lien itself while valuation under Rule 3012 would be for the purposes indicated above.

*Bivens* at \*10.[5]

However, while the court found that the value of property could be established through the confirmation process, the court found that the value placed by Bivens in their plan did not bind the junior mortgagee with respect to the adversary proceeding filed to avoid the mortgage lien, specifically finding that the Bivens' Chapter 13 plan "did not provide sufficient

---

**5.** The following precedent on stripping mortgages, in particular in the Southern District of Ohio and in the Sixth Circuit, support the value of real property being established through the plan confirmation process at either the confirmation hearing or a separate valuation hearing. *See In re Callander*, 263 B.R. 567, 573 (Bankr.S.D.Ohio 2001); *Ernst v. Bank One, N.A. (In re Ernst)*, 270 B.R. 707, 710 (Bankr.S.D.Ohio 2001); In *In re Fox*, 142 B.R. 206, 207–09 (Bankr.S.D.Ohio 1992); and *In re Hill*, 304 B.R. 800, 805 (Bankr. S.D.Ohio 2003).

notice to the Bank to serve as a valuation hearing for purposes of § 506(a) or BR 3012 and, therefore, did not satisfy due process requirements." *Bivens* at \*12. The court framed the issue as: "whether the Plan adequately apprised the Bank that the confirmation hearing was going to be a valuation hearing so that the Bank knew or should have known that the value of the Property was being determined at the confirmation hearing," noting that "[t]his question is critical not only from a due process standpoint, but also because BR 3012 allows the court to determine the value of property only " 'after a hearing on notice to the holder of the secured claim. . . .' " *Bivens* at \*12.

The court rejected the Bivens' argument that the binding effect of the confirmation order under § 1327(a) precluded M & I Bank from litigating the value of their residence listed in the plan. This court noted that "a provision of a Chapter 13 plan only has preclusive effect if: a) the notice of the plan is satisfactory under the circumstances and does not deny due process *(Calvert*, 907 F.2d at 1072; *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir.1993) and *Flynn*, 402 B.R. at 445) and b) the pertinent plan provision is clear and unambiguous *(County of Ventura Tax Collector v. Brawders (In re Brawders)*, 325 B.R. 405, 411 (9th Cir. BAP 2005); *In re Mershon*, 2005 WL 4030035 (Bankr.S.D.Ohio 2005); *Turek v. Dehart (In re Turek)*, 346 B.R. 350, 355 (Bankr.M.D.Pa.2006))." *Bivens* at \*13. The court found that the Bivens' plan failed on both of these accounts. In so finding, the court noted that:

> Both in *Calvert* and in *Linkous*, the courts held that if the creditor whose lien was being attacked did not receive specific notice that the confirmation hearing would serve as a § 506(a) or BR 3012 valuation hearing, then the creditor's due process rights had been violat-

ed and the confirmation order was not binding on the creditor for lien stripping purposes. *See Linkous*, 990 F.2d at 163. In *Calvert* the court remarked that: "Mere notice that the bankruptcy court will hold a confirmation hearing on a proposed bankruptcy plan, without inclusion of notice specifically directed at the security valuation process, does not satisfy the requirement of Rule 3012." *Calvert*, 907 F.2d at 1072. The court added that notice of "a mere possibility that they will consider collateral valuation" is not sufficient to avoid a due process violation. *Id.* at 1072, n. 3.

*Bivens* at \*14–15.

First, the court found "that the Bank did not receive specific notice that the confirmation hearing would serve as a valuation hearing under § 506(a) or BR 3012 and, therefore, under the due process standards enunciated in *Calvert* and *Linkous*, the confirmation order did not bind the Bank to the value placed in the Plan for the Property. The notice of the confirmation hearing . . . did not advise the Bank that the confirmation hearing would include a valuation hearing under § 506(a) or BR 3012 relating to the Property." *Bivens* at \*15. At that time, the Chapter 13 Trustee's form plan contained the following conspicuous warning on the first page of the form plan (the "preamble"):

> **You should read this Plan carefully. Confirmation of this Plan by the Bankruptcy Court may modify your rights by providing for payment of less than the full amount of your claim, by setting the value of the collateral securing your claim, by providing for a treatment of your claim contrary to your current status, and/or by setting the interest rate on your claim. The Court may confirm this case if no objection to confirmation is**

filed within ten (10) days after the § 341 Meeting of Creditors is concluded (L.B.R.3015–3(a)).

The court concluded that this prefatory warning language was in the vein of the "mere possibility" language that the *Calvert* court held was not sufficient and not specific enough to provide adequate notice to M & I Bank that the confirmation hearing would serve as a valuation hearing under § 506(a) or Rule 3012. *See Bivens* at *15–16, *citing Calvert*, 907 F.2d at 1072, n. 3.

Second, the court found that the Bank did not receive sufficient due process notice that its failure to object to the value placed in the Bivens' plan amendment would constitute a valuation of their residence under § 506(a) and Rule 3012. While the amended plan stated that the residence "is valued at $42,000," this provision did not specifically state that the confirmation hearing would include a § 506(a) or Rule 3012 valuation hearing if M & I Bank disputed that value or that the value stated in the plan would be binding absent an objection and, rather, stated that an objection to any claim filed by M & I Bank as a secured claim would be filed and that an adversary proceeding would be filed to strip the mortgage lien. *See Bivens* at *16.

Finally, the court found that the value placed in the Bivens' plan did not have preclusive effect because the plan was ambiguous as to whether the confirmation hearing was serving as a valuation hearing and whether the plan was setting the value of the residence for lien stripping purposes, noting that a plan is a contract between a debtor and his creditors and, as such, any ambiguity in the terms of the plan must be construed against the debtor, citing *In re Brawders*, 325 B.R. 405, 411 (9th Cir. BAP 2005); *Mershon*, 2005 WL 4030035 at *2; *Turek*, 346 B.R. at 355; and *In re Fawcett*, 758 F.2d 588, 591 (11th Cir.1985). The court found the Bivens' plan ambiguous in this regard for three reasons: a) the reference to the value of the residence in the plan constituted a simple, bare statement that the residence "is valued at $42,000"; b) the provision of the plan addressing the treatment of M & I Bank's claim specifically indicated that the Bivens were going to file an adversary proceeding to strip the mortgage lien and would file an objection to any proof of claim filed by the Bank as a "secured" claim, noting that this language would reasonably lead M & I Bank and its counsel to believe that the issues pertaining to whether it was secured would be litigated through a subsequent proceeding;[6] and c) the court's local rules provide for setting the valuation of personal property within a Chapter 13 plan, but there is no such provision in the court's local rules for the confirmation hearing serving as a valuation hearing for real property. See Local Bankruptcy Rule 3012–1.[7] Thus, the court found that the ambiguity in the plan over these issues had to be construed against the debtors as the drafters and proponents of their plan. *See Bivens* at *17.

Subsequent to the court's issuance of its decision in *Bivens*, Jeffery M. Kellner, the

---

6. The form plan for the Dayton location of the Bankruptcy Court for the Southern District of Ohio contemplates an adversary proceeding to strip off a wholly unsecured mortgage. *See* est. doc. 5, p. 12, § 19(C).

7. However, the court specifically noted that it was "not concluding that the absence of this provision prohibits the confirmation hearing from serving as a valuation hearing under BR 3012, but merely that the lack of such provision, coupled with the language of the Plan and the notice of confirmation hearing, failed to put the Bank on notice that the confirmation hearing would be a valuation hearing for the Property." *Bivens* at *18–19.

Dayton Chapter 13 Trustee, revised the form Chapter 13 plan, including by adding or changing provisions relating to the valuation of real property and the confirmation hearing serving as a valuation hearing. The court will now discuss those provisions.

### B. *The Plan Provisions Contained in the Plan and the New Dayton Chapter 13 Form Plan*

There are several provisions of the Dayton form plan (the "Form Plan") which are pertinent to whether the value of the Property contained in the Appraisal is binding on Springleaf. The first such provision is the preamble to the Plan, being the conspicuous colored box at the beginning of the Plan containing text in bold. By coloring that box and enclosing the two paragraphs in the box in bold text, the clear intention is to place special emphasis on that language and to try to alert the reader to it. The language in that box reads as follows:

> **You should read this Plan carefully. Confirmation of this Plan by the Bankruptcy Court may modify your rights by providing for payment of less than the full amount of your claim, by setting the value of the collateral, both real and personal property, securing your claim, by providing for a treatment of your claim contrary to your current status, and/or by setting the interest rate on your claim. The confirmation hearing in this case shall include a valuation hearing pursuant to 11 U.S.C. §506(a) and Bankruptcy Rule 3012. The Court may confirm this case if no objection to confirmation is filed within fourteen (14) days after the §341 Meeting of Creditors is concluded [(L.B.R. 3015-3(a)].**
>
> **Your rights may be affected by the Plan and upon confirmation you will be bound by the terms of this Plan. You should read the provisions in this Plan carefully (especially the Special Plan Provisions of Paragraph 19) to ensure that you protect your rights and understand the provisions of this Plan and file any appropriate response or objection in a timely manner pursuant to the guidelines set forth in this Plan, the L.B.R. or the Bankruptcy Code.**

*See* estate doc. 5, p. 1. (emphasis in original).

The second significant section of the Form Plan is § 18, which provides the treatment for claims secured by real estate owned by the debtor. That section, as completed by Bennett in this case with her particular elections added, provides as follows:

> 18. **PLAN FOR REAL ESTATE (Use separate schedule for each parcel of real estate)**
>
> \* \* \* \*
>
> (E) **Valuation of real estate is set at confirmation unless the appraisal is not filed per L.B.R. 3015-3(e)(3).** The confirmation hearing will include a § 506(a) or B.R. 3012 valuation hearing if a creditor disputes the value and objects pursuant to the requirements of the Local Bankruptcy Rules. If no objection is timely filed, the value as set forth in the Chapter 13 Plan and/or filed Appraisal will be binding upon confirmation of the Chapter 13 Plan.
>
> \* \* \* \*
>
> **PARCEL NO. 1**
>
> **Description and Location of Property: 366 Fairway Drive, Fairborn, OH 45324**
>
> Appraisal must be provided by Debtor and the appraisal must be filed with the Court before the Meeting of Creditors.
>
> Personal Residence ☒ Yes ☐ No Original Purchase Price $128,900.00

430

Lien Holder # 1 (Must match Schedule D)

Bank of America Mortgage, Inc., 100 North Tryon Street, Charlotte, NC 28255

| | |
|---|---|
| Monthly Payment | $1,017.15 |
| Months in Default | 5 |
| Total Arrearage (including month petition filed)* | $5,085.75 |

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015–1(d)(1).

☐ Interest will NOT be paid on the mortgage arrearage claim unless this box is checked:

If Trustee disburses, then arrearage shall be paid as a class 2 creditor.

**\* Estimate only-the filed Proof of Claim, subject to objections, shall determine the actual arrearage.**

Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

_____

Lien Holder # 2 (Must match Schedule D) Springleaf Financial, 2628 Colonel Glenn Hwy., Fairborn, OH 45324–5612

| | |
|---|---|
| Monthly Payment | **See Special Plan Provision** |
| Months in Default | **See Special Plan Provision** |
| Total Arrearage (including month petition filed)* | **See Special Plan Provision** |

\* \* \* \*

*See* estate doc. 5, pp. 9–11. (emphasis in original).

The last material section of the Form Plan is § 19 which contains the "Special Plan Provisions." This is the section in which the debtor is to place any provisions that are not otherwise provided by the terms of the Form Plan, including special treatment of a claim, such as the avoidance of a lien on an otherwise secured claim. Inclusion of this section in the Form Plan assists the court, the Chapter 13 Trustee, and creditors in reviewing and analyzing debtors' plans because special treatment of creditor claims is to be set forth in that section—providing the parties in interest with one place to look to determine if there is any objectionable provision in the plan which might give reason to deny confirmation of any such plan. Section 19 of the

Form Plan, as completed by Bennett in this case, provides as follows:

**19. The Special Plan Provisions** listed below, if any, are restricted to those items applicable to ***Debtor's particular circumstances.*** NOTE: Special Plan Provisions shall **NOT** contain a restatement of provisions of the Bankruptcy code or local or national rules of bankruptcy procedures, nor shall this section contain boilerplate language regarding the treatment of mortgages, mortgage arrearages, proofs of claim, consumer protection provisions or similar matters.

**Special Plan Provisions:**

(A)☐ **Other:** <u>None</u>

(B) ☐ **Surrender of Real Estate**—Debtor(s) hereby surrender the real estate property located at <u>Property Address.</u>

Trustee will **not** pay on any mortgages, mortgage arrearages or certificate of judgments related to this real estate, nor pay any county real estate taxes on this property as the taxes will be paid at the foreclosure sale unless otherwise provided for in this Plan. Trustee will NOT pay on the claims of Mortgage Creditor(s) for any filed mortgage claims or liens until Creditor files a deficiency claim. The deficiency claim shall be filed no later than 270 days from the date that the within Plan is confirmed. If the deficiency claim is filed more than 270 days after the Plan is confirmed, then it shall be disallowed except upon further Order of the Court by the Creditor filing timely a Motion to Extend Time OR Motion to File the Deficiency Claim Out of Time. The personal liability of the Debtor(s) shall be discharged upon completion of the Plan and the entry of Discharge.

(C)☒ **Avoiding Lien, Mortgage or Judgments**—Debtor is filing an Adversary Proceeding/Motion to avoid the mortgage lien of Creditor Springleaf Financial on the property located at 366 Fairway Drive, Fairborn, OH 45324. Said action should be filed within thirty (30) days of confirmation. Creditor shall release the mortgage lien upon completion of the Plan as evidenced by the Chapter 13 Trustee's Certification of Final Payment and Case History. In the event of failure of the Creditor Springleaf Financial to execute and deliver the release of the mortgage or lien within thirty (30) days after the plan completion as evidenced by the Chapter 13 Trustee's Certification of Final Payment and Case History in the instant case, Debtor may present a certified copy of this Court's Order regarding the mortgage or lien to the Office of the County Recorder of the proper county and said document will act as a release with regards to the mortgage or lien.

\* \* \* \*

*See* estate doc. 5, pp. 11–12.

The court will now analyze the facts of this case, including the provisions contained in the Form Plan as completed by Bennett, to determine whether the value placed on the Property by the Appraisal is binding on Springleaf in the adversary proceeding. This discussion will include an analysis of differences between the *Bivens* plan and the Plan.

### III. Legal Analysis

#### A. *Jurisdiction*

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

#### B. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings through Bankruptcy Rule 7056, sets forth the standard to address the parties' filings. It states, in part, that a court must grant summary judgment to the moving party if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.

In order to prevail, the movant, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the nonmovant at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmovant's claim or 2) demonstrate to the court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim. *Id.* at 331–32, 106 S.Ct. 2548. Thereafter, the nonmovant "must come forward with 'spe-

432

cific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348.

## C. *Discussion*

### 1. Introduction

■ Bennett's motion for summary judgment arises out of the Sixth Circuit's adoption of the majority position that mortgages granted on primary residences to which no value can be attributed pursuant to 11 U.S.C. § 506(a) can be stripped off through a Chapter 13 bankruptcy case upon successful completion of the payments under the Chapter 13 plan. *Lane v. Western Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir.2002). Thus, the issue presented is whether the changes made to the Form Plan are sufficient to render the uncontested property value in the Appraisal binding on Springleaf.

### 2. Positions of the Parties

Bennett asserts that the new language of the Form Plan sufficiently apprises creditors, such as Springleaf, that absent a timely objection being filed to a debtor's plan, the value contained in the debtor's appraisal, filed with the court in accordance with the local bankruptcy rules for this District, fixes the value of a debtor's property for lien stripping purposes and precludes the creditor's from re-litigating that issue, including in a later adversary proceeding to strip a junior mortgage.

Springleaf argues that the terms of the plan do not meet the due process standards of the Ohio or United States Constitution. Springleaf asserts that since the time that the Bankruptcy Code was enacted in 1978, the Dayton location has required that the value of real estate for avoidance purposes must be established either through an adversary proceeding or a motion and, therefore, since this "has been the established procedure in this court for 33 years, ... creditors rely on this." *Memorandum in Opposition*, p. 1. Springleaf further notes that this court's order (adv. doc. 9) "presumes that an appraisal will be performed by the creditor and gives a deadline of December 5, 2011 to have it completed." *Id.* at p. 2. Springleaf concludes by asserting that the plan provisions have "not afforded Springleaf adequate notice to alert it as to the change in the procedure." *Id.*

### 3. Due Process

Springleaf claims that it has not been provided due process—specifically that the terms of the Form Plan did not provide Springleaf with sufficient notice of the change in procedure with respect to the valuation of real property for lien stripping purposes in light of the thirty-three year history of valuing property through a motion or adversary proceeding. In making this argument, Springleaf has neither provided the court with an affidavit or other Rule 56 evidence to support its statements, nor has it provided the court with any citations of legal authority supporting its position.

The United States Supreme Court has recently opined on due process relating to a Chapter 13 plan.[8] *United Student Aid*

**8.** While Springleaf asserted in its *Memorandum in Opposition* that the Plan provisions do not "fulfill the due process requirements of the United States and Ohio Constitutions," it provided the court with no citation to any provision of either constitution violated by the

*Funds, Inc. v. Espinosa* involved a bankruptcy court's confirmation of a plan that provided for the discharge of a student loan obligation. —— U.S. ——, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). The creditor argued that due process required that an adversary proceeding be filed to discharge a student loan obligation and, therefore, since an adversary proceeding was not filed pursuant to § 523(a)(8) and Bankruptcy Rule 7001(6), the confirmation order should have been vacated pursuant to Bankruptcy Rule 9024 (incorporating Federal Rule of Civil Procedure 60(b)). In rejecting that argument, the Court agreed that § 523(a)(8) and Bankruptcy Rule 7001(6) require that an adversary proceeding be filed to discharge a student loan obligation and chastised the bankruptcy court for confirming the plan without making a hardship determination pursuant to those provisions. However, the Court held that the bankruptcy court's confirmation of the plan providing for the discharge of the student loan obligation did not deny the creditor due process. *Id.* at 1378.[9]

In finding that the creditor's due process rights were not violated, the Supreme Court cited the landmark *Mullane* decision[10] and determined that due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1372. The Court noted that the creditor received actual notice of the filing and contents of the debtor's plan and found that "[t]his more than satisfied [the creditor's] due process rights." *Id.* at 1378.

■ In *In re McLemore*, this court noted that a confirmation order approving a Chapter 13 plan is res judicata and not subject to collateral attack by a creditor who has received adequate notice of the plan. 426 B.R. 728, 735 (Bankr.S.D.Ohio 2010). The court further noted that whether the notice provided by the plan is sufficient is a due process issue framed by the *Mullane* standard. Thus, "[d]ue process is the linchpin to determining the rights of secured creditors in chapter 13, and if a creditor receives clear notice, but chooses to ignore the bankruptcy proceedings, it does so at its peril." *Id* at 735, *citing In re Shook*, 278 B.R. 815, 825 (9th Cir. BAP 2002) and *Lawrence Tractor v. Gregory (In re Gregory)*, 705 F.2d 1118, 1122–23 (9th Cir.1983).

This court drew a distinction between notice that is "quantitatively defective" and notice that is "qualitatively defective." Notice which is quantitatively defective results when a party has not been properly

---

process set forth in the Debtor's plan, nor any case law or other authority supporting its federal and state due process arguments. This is a federal court involving federal bankruptcy law and rights and interests affected by federal bankruptcy law and, thus, the court's analysis is predicated upon due process under the United States Constitution as interpreted by the United States Supreme Court. While the court assumes for argument's sake that Springleaf's rights under the Ohio Constitution could theoretically be affected by the Plan, the court is unable to address this argument without any specificity provided to support the argument.

**9.** The due process argument made by Springleaf is weaker than the one rejected in *Espinosa*. In *Espinosa* the bankruptcy court confirmed the plan even though it contained a procedure that violated a specific Bankruptcy Code section and a Bankruptcy Rule governing such debts. As this court determined in *Bivens*, that is not the situation with respect to the real property valuation issue—the Bankruptcy Code and Rules specifically contemplate the determination of value outside an adversary proceeding.

**10.** *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

served with the filing which attempts to alter its rights. *See McLemore,* 426 B.R. at 735. However, Springleaf does not argue that it was not properly served with the Plan.

Springleaf's argument is that the notice provided by the Plan was qualitatively defective. Without citing to any specific provisions or omissions in the Plan, Springleaf argues that the information in the Plan was insufficient to apprise it that the value of the Property would be determined through the confirmation process and that the Plan's provisions were insufficient to overcome the thirty-three year precedent in Dayton of determining value for strip-off purposes through a separate hearing or adversary proceeding. Springleaf is incorrect on both points.

a. *The Information in the Plan was Sufficient to Apprise Springleaf that the Value of the Property Would Be Determined Through Confirmation.*

■ The Plan has significant differences from the *Bivens* plan which should have put Springleaf on notice that the confirmation hearing and confirmation process would result in the valuation of the Property for lien stripping purposes.

First, while both plans contained a conspicuous preamble with text in bold in a box at the beginning of the plan which cautioned creditors and parties in interest to read the plan carefully and that the plan "may modify your rights by providing for payment of less than the full amount of your claim, by setting the value of the collateral securing your claim, by providing for a treatment of your claim contrary to your current status, and/or by setting the interest rate on your claim;" Bennett added the following statement in that preamble to the Plan:

**The confirmation hearing in this case shall include a valuation hearing pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012.**

See estate doc. 5, p. 1. (bold in original). Both preambles include the statement that "[t]he Court may confirm this case if no objection to confirmation is filed within ten (10) days after the § 341 Meeting of Creditors is concluded (L.B.R.3015–3(a))." Thus, the Plan added a specific clear statement to the preamble that the confirmation hearing would serve as a valuation hearing pursuant to § 506(a) and Bankruptcy 3012. It is also significant to note that § 506(a) explicitly provides for the valuation of collateral "in conjunction with any hearing . . . on a plan affecting such creditor's interest" and Rule 3012 allows the court to make such a value determination "after a hearing on notice to the holder of the secured claim . . . ."

Second, § 18 of the Plan contained the following provision which the *Bivens* plan did not:

(E) **Valuation of real estate is set at confirmation unless the appraisal is not filed per L.B.R. 3015–3(e)(3).** The confirmation hearing will include a § 506(a) or B.R. 3012 valuation hearing if a creditor disputes the value and objects pursuant to the requirements of the Local Bankruptcy Rules. If no objection is timely filed, the value as set forth in the Chapter 13 Plan and/or filed Appraisal will be binding upon confirmation of the Chapter 13 Plan.

*See* estate doc. 5, p. 10. (bold in original). This provision again advises secured creditors, such as Springleaf, that the confirmation hearing will include a valuation hearing if the creditor objects to the value set forth in the plan or in the debtor's appraisal report if the appraisal report is timely filed in accordance with Local Bankruptcy Rule 3015–3(e)(3). The court also notes

that the heading for § 18(E) is in bold for emphasis.[11]

Finally, the Plan, like the *Bivens* plan, contained a specific provision in § 19 of the Plan, the Special Plan Provisions, which explicitly identified the Springleaf mortgage as being the subject of a mortgage strip-off adversary proceeding. *See* est. doc. 5, p. 12, § 19(C). While in *Bivens* this language, in addition to the other particular facts in *Bivens*, was availing to the mortgagee, it is not so in this case. In *Bivens* the plan did not contain the explicit language advising the mortgagee that the confirmation hearing would serve as the real estate valuation hearing. Thus, the mortgagee could reasonably assume that the valuation hearing would be subsumed within the trial of the adversary proceeding. The language added to the Form Plan used by Bennett should have dispelled any belief that valuation of the Property would be determined through the adversary proceeding.[12] This provision in the Plan states precisely the opposite.

The language advising creditors that the confirmation hearing would serve as a valuation hearing may be difficult for a lay person to comprehend. However, individual circumstances may be taken into account when determining whether the notice provided the creditor with due process. *McLemore,* 426 B.R. at 736–37, *citing In re Hudson,* 260 B.R. 421, 442 (Bankr.W.D.Mich.2001). Thus, it may be appropriate to consider a "creditor's sophistication, the amount of their involvement in the bankruptcy proceeding, as well as that creditor's reliance on the claims allowance procedures as demonstrated by a proof of claim filed before plan confirmation." *Hudson,* at 443, *citing In re Basham,* 167 B.R. 903, 908 (Bankr.W.D.Mo. 1994).

If a representative of Springleaf did not understand the provisions of the Plan addressing valuation of the real estate, it was incumbent upon that representative to inquire of its legal counsel. The Form Plan is a legal document requiring some degree

11. Springleaf refers to the provisions of the Plan providing for valuation of the real property through confirmation of the Plan as "boilerplate." Black's Law Dictionary defines "boilerplate" as "[r]eady-made or all purpose language that will fit in a variety of documents." *Black's Law Dictionary* (9th ed. 2009), p. 198. The court finds that the Form Plan's provisions were specific to real estate valuation within a Chapter 13 plan and were not boilerplate.

12. In finding that the language of the Form Plan is sufficient to provide creditors with due process notice that the confirmation hearing will serve as a valuation hearing for real property, the court is not eliminating the need in the Dayton location, absent an agreed order, to file an adversary proceeding to avoid mortgage liens. The court also is not determining that valuation must be determined at the confirmation hearing. Through consent of the parties, valuation may be determined through an adversary proceeding filed to avoid the lien. This is one reason that the

court has continued to enter orders providing for the parties' filing of appraisal reports in adversary proceedings to strip off wholly unsecured mortgages. Springleaf's argument that this court's order (adv. doc. 9) "presumes that an appraisal will be performed by the creditor and gives a deadline of December 5, 2011 to have it completed" (*Memorandum in Opposition,* p. 1) is unconvincing in the context of this case. The court is merely determining that, consistent with its prior holding in *Bivens,* the confirmation hearing may serve as a valuation hearing for lien-stripping purposes, the Form Plan sufficiently apprises creditors that the confirmation hearing shall serve as a valuation hearing, and that absent a timely filed objection to the debtor's value placed on the real property through the debtor's plan or the appraisal report filed in conformance with Local Bankruptcy Rule 3015–3(e)(3), the confirmation order will preclude any properly served creditor from later contesting the value assigned to the property. *See* § 1327(a).

of legal proficiency. The subject provisions address the claims of sophisticated institutional creditors like Springleaf who make loans to consumers often secured by a junior lien on a debtor's residence. The court concludes that the subject language in the Form Plan should have been understood by a sophisticated commercial creditor to provide for the valuation of the Property through confirmation of the Plan. Springleaf, as a financial institution in the business of making loans to debtors like Bennett secured by residential real estate, indisputably stands as a sophisticated creditor that should be versed in the intricacies of bankruptcy generally and Chapter 13 specifically.

Accordingly, the court finds that the provisions added to the Form Plan used by Bennett were sufficient to put Springleaf on notice that the confirmation hearing would serve as a valuation hearing pursuant to § 506(a) and Rule 3012 for lien-stripping purposes. Unlike in *Bivens,* the Plan contained clear, explicit provisions advising Springleaf and other creditors that the confirmation hearing would serve as a valuation hearing for real property securing creditors' claims which were being treated under the Plan. The court will now address whether the Dayton location's history of determining value for lien-stripping purposes through a separately filed motion or adversary proceeding deprived Springleaf of due process.

b. *Bivens and the Form Plan Used by Bennett were Adequate to Apprise Springleaf of any Change in Procedures for Determination of the Value of Real Property for Lien Stripping Purposes*

■ The thrust of Springleaf's argument is that application of the subject plan sections would result in a violation of due process because those provisions are not sufficient to overcome the historical prece-

dent of real property being valued for lien stripping purposes in Dayton through a separate motion or adversary proceeding. The court rejects this argument for three reasons.

First, Springleaf failed to support this argument with any evidence. Springleaf's *Memorandum in Opposition* was not supported with an affidavit or other evidence submitted in conformance with Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56. Springleaf's argument is premised upon unsupported assertions that:

a) "Since the bankruptcy code was changed in 1978, it has been established in the Dayton Bankruptcy Court that any Chapter 13 plan that seeks to establish the value of real estate regarding avoidance issues must be done by way of an adversary proceeding or a motion;"

b) "This has been the established procedure in this court for 33 years, and creditors rely on this;" and

c) "The wording in the chapter 13 plan sent to creditors is simply insufficient to properly advise creditors as to the dramatic change in procedure. It must be remembered that the chapter 13 plan and notice is served on the creditors directly. A reasonable creditor, upon reading the notice, would simply not understand the dramatic change in the procedure that has been in effect over 33 years."

See *Memorandum in Opposition,* pp. 1–2. However, Springleaf did not submit an affidavit or other evidence that: a) it was familiar with this purported thirty-three year history; b) that it relied on this thirty-three year history; c) that a representative of Springleaf actually read the Plan; and d) that after reading the Plan, the representative did not understand that the procedure regarding when real estate would be valued for lien-stripping proce-

dures was changed. Federal Rule of Civil Procedure 56(e) provides that when a party fails to properly support an assertion of fact the court may grant summary judgment if the motion and supporting materials show that the movant is entitled to summary judgment. The court finds that granting summary judgment is appropriate because Springleaf did not support its factual assertions with an affidavit or other evidence permitted under Rule 56 and the court does not believe that Springleaf could submit credible evidence supporting such assertions. As outlined, the Plan, in clear, conspicuous, and explicit language, advises secured creditors that the confirmation hearing will serve as the valuation hearing.

Second, Springleaf's argument regarding the thirty-three year history in Dayton of lien-stripping by motion or adversary proceeding is incomplete. Specifically, Springleaf's argument ignores the *Bivens* decision. The history of avoiding wholly unsecured mortgages in Dayton includes *Bivens*. As noted, in *Bivens* this court held that value could be determined through the plan confirmation process if the plan adequately apprised creditors that the confirmation hearing would determine the value of the real property. While not published in one of the nationally recognized bankruptcy reporters, *Bivens* was placed in the court's indexed decisions on the court's website which is available to the bar and the general public. Thus, the possibility of valuing real property through a Chapter 13 plan in Dayton was made known on September 30, 2009 and is part of the history of mortgage avoidance in Dayton. The Form Plan used by Bennett was adopted following *Bivens* and presumably takes *Bivens* into consideration. In short, any ruling by this court that the value of real property can be determined through a Chapter 13 plan for lien-strip-

ping purposes cannot be considered a shot out of the dark.

Furthermore, as Springleaf acknowledges, value has been determined by motion in Dayton. *See Ernst v. Bank One, N.A. (In re Ernst)*, 270 B.R. 707, 710 (Bankr.S.D.Ohio 2001) and Bankruptcy Rule 3012. Springleaf does not explain how determining value through a plan materially differs from determining value through a motion. It has also been held that a bankruptcy court is not required to hold a separate hearing when value is determined through confirmation of a plan— the confirmation hearing is sufficient. *Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069, 1072 (11th Cir. 1990) (Valuation of property may be conducted in conjunction with confirmation of plan; there is no requirement of a separate hearing); *In re Holmes*, 225 B.R. 789, 793 (Bankr.D.Colo.1998) (Value of property may be determined as part of the Chapter 13 confirmation hearing). Of course it has long been black letter law that an actual hearing need not take place if the affected party has received notice of the proposed action and fails to object. In such cases the affected party has been provided with an opportunity to have a hearing, but by failing to object to the proposed action, waives its right to a hearing. *See* 11 U.S.C. § 102(1) ("'after notice and a hearing' ... authorizes an act without an actual hearing if such notice is given properly ..."); and Bankruptcy Rule 3015(f) ("If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues"). *See also* Local Bankruptcy Rules 3015–3(c) ("Plans that appear to the court to meet all statutory tests for confirmation and to which no objections to confirmation have been filed may be confirmed on the consent docket without actual presenta-

tion. . . . It is the duty of the debtor's attorney, the trustee, or parties in interest to inform the court of any existing bar to confirmation.") and 9013–1(d) ("Failure to file a response on a timely basis may be cause for the court or the clerk to grant the motion or application as filed without further notice to the extent such action would not conflict with any Rule or Federal Rule of Civil Procedure."). The conspicuousness of the admonition in the preamble and the bold section heading for § 18(E) of the Form Plan sufficiently apprise creditors that the value of real property will be determined at the confirmation hearing. A separate hearing is not necessary to afford creditors due process.

Third, the perceived long history of determining the value of real property through an adversary proceeding or through a separately filed motion with a separate hearing on that motion does not rise to the level of a due process violation in light of the clear and specific language of the Plan and the fact that *Bivens* foreshadowed this possibility. An argument similar to that made by Springleaf in this case was made and rejected in *Nissan Motor Acceptance Corp. v. Smith*, 2010 WL 4005056, 2010 U.S. Dist. LEXIS 112700 (E.D.Wis. Oct. 12, 2010). In that case the debtor filed a Chapter 13 plan which bifurcated a motor vehicle financing loan into secured and unsecured claims on the basis that the provision known as the "hanging paragraph" of § 1325(a) prohibiting motor vehicle loans from being bifurcated into secured and unsecured portions did not apply because the debtor did not purchase the vehicle for his own personal use, but rather, for use by a third person. No objection to this plan treatment was filed and the plan was confirmed by the bankruptcy court. The creditor later argued that it did not need to object to this provision of the plan because the local bankruptcy rules and practice in the district eliminated any need to file and prosecute such an objection—asserting that its proof of claim filed as secured properly addressed that issue without a need to file an objection to the plan. The bankruptcy court rejected this argument and upon appeal to the district court, the district court affirmed the bankruptcy court, stating:

> Nissan submits that the Chapter 13 Plan filed by Smith provided no notice "that it sought to overrule the past practice in this district and ignore the local rules. Accordingly, it was not afforded due process to present any objection to the proposed plan treatment." Yet Nissan, a sophisticated and secured creditor, had adequate notice, and could have attended the creditor's meeting or filed an objection to confirmation. Thus, in the absence of a more compelling argument by Nissan, the court finds that the Bankruptcy Code and Rules apply.

*Id.* at *4.

Similarly, the court finds that Springleaf's historical practice argument is not sufficiently compelling to overcome: a) the clear and conspicuous language of the Plan; b) the binding nature of the Plan as provided by § 1327(a) (*see McLemore*, 426 B.R. at 734–35 and *In re Thaxton*, 335 B.R. 372, 374–75 (Bankr.N.D.Ohio 2005); c) § 506(a)(1) which anticipates value will be determined "in conjunction with any hearing . . . on a plan affecting such creditor's interest;" and d) *Bivens'* foreshadowing of the determination of the value of real property for lien-stripping purposes through the Chapter 13 plan confirmation process.

## IV. *Conclusion*

Accordingly, Debtor Jackie Bennett's motion for summary judgment is **granted.** Based upon the facts of this case, the court finds no valid reason not to enforce the

confirmation order. That confirmation order approved a Chapter 13 plan which fixed the value of Bennett's residence at $120,000 based upon the value assigned to the Property in the Appraisal. As this valuation does not provide any equity for the Springleaf junior mortgage to attach, this lien may be avoided as wholly unsecured. A separate order will be entered simultaneously with the filing of this decision.

Copies to:

Andrew Zeigler, Thompson & Deveny Co. LPA, 1340 Woodman Dr., Dayton, OH 45432

Stephen D. Miles, 18 West Monument Ave., Dayton, OH 45402

Jeffrey M. Kellner (Chapter 13 Trustee), Scott G. Stout (Staff Attorney), 131 North Ludlow St., Ste. 900, Dayton, OH 45402

Office of the United States Trustee, 170 North High Street, Suite 200, Columbus, Ohio 43215